# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 14-1520

———————————————

St. Louis Effort For AIDS; Planned Parenthood of the St. Louis Region and
Southwest Missouri; Consumers Council of Missouri; Missouri Jobs With Justice;
Jeanette Mott Oxford; Dr. Wayne Letizia; Dr. William Fogarty; Chris Worth

*Plaintiffs - Appellees*

v.

Director John M. Huff, in his official capacity as the Director of the Missouri
Department of Insurance, Financial Institutions and Professional Registration

*Defendant - Appellant*

------------------------------

Missouri Association of Insurance Agents

*Amicus on Behalf of Appellant*

AARP; Sargent Shriver National Center on Poverty Law

*Amici on Behalf of Appellees*

——————————

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

——————————

Submitted: January 14, 2015
Filed: April 10, 2015

——————————

Before RILEY, Chief Judge, BEAM and COLLOTON, Circuit Judges.
_____

RILEY, Chief Judge.

St. Louis Effort for AIDS, Planned Parenthood of the St. Louis Region and Southwest Missouri (Planned Parenthood) (collectively, appellees), and a number of other individuals and entities brought this facial challenge to Missouri's Health Insurance Marketplace Innovation Act (HIMIA), Mo. Rev. Stat. § 376.2000 et seq. The plaintiffs sought a preliminary injunction, claiming certain portions of the HIMIA are preempted by federal law, violate the First Amendment to the United States Constitution, and are void for vagueness under the Due Process Clause of the Fourteenth Amendment. Enjoining the HIMIA in its entirety, the district court held the appellees—but not the other named plaintiffs—were likely to succeed on the merits of their preemption claim. John Huff, in his capacity as Director of the Missouri Department of Insurance, Financial Institutions and Professional Registration, appeals. We affirm in part and otherwise vacate the preliminary injunction and remand the case to the district court.[1]

I.     BACKGROUND

The Patient Protection and Affordable Care Act (ACA) created "navigators"—individuals who assist consumers in purchasing health insurance from state and federal health care exchanges. See 42 U.S.C. § 18031(i). The ACA granted the Secretary of the United States Department of Health and Human Services (HHS) the power to "establish standards for navigators," id. § 18031(i)(4)(A), and more generally, to "issue regulations setting standards for . . . the establishment and operation of Exchanges," id. § 18041(a)(1)(A). HHS regulations recognize three categories of individuals who facilitate enrollment in exchanges: federal navigators,

_____
[1]Judge Colloton joins all but Part II.A.1 of this opinion.

certified application counselors (CACs), and non-navigator assistance personnel.[2] See 45 C.F.R. §§ 155.210, 155.215, 155.225. Because the primary goal of both federal navigators and CACs is to facilitate enrollment in exchanges, they conduct many of the same activities. Compare 42 U.S.C. § 18031(i)(3), and 45 C.F.R. § 155.210(e), with 45 C.F.R. § 155.225(c). Still, federal navigators have a more extensive set of duties than CACs, and only federal navigators receive federal monetary grants. See 42 U.S.C. § 18031(i)(1), (3). The appellees are both federally certified as counselor designated organizations and employ individuals working as CACs.[3]

Acting under the ACA, the federal government established a Federally-facilitated Exchange (FFE) in Missouri, and federal navigators and CACs assist in the operation of this exchange. The Missouri legislature enacted the HIMIA to regulate "person[s] that, for compensation, provide[] information or services in connection with eligibility, enrollment, or program specifications of any health benefit exchange

---

[2]Non-navigator assistance personnel exist only in states operating their own health care exchanges. See 42 U.S.C. § 18031(a); 45 C.F.R. § 155.215(a). Because Missouri has not created an exchange, non-navigator assistance personnel are not involved here.

[3]The district court found the appellees "are Counselor Designated Organizations, CACs, and Navigators under the ACA." This finding is clearly erroneous. See Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d 355, 362 (8th Cir. 2007) (explaining that when reviewing "the issuance of a preliminary injunction . . . [w]e review the District Court's material factual findings for clear error" (quotation omitted)). The complaint explicitly asserts the appellees are "Counselor Designated Organizations"—which must comply with the federal standards governing CACs, see 45 C.F.R. § 155.225(b)(1)(i). There is no suggestion in the complaint that either organization received a federal grant, a defining characteristic of federal navigators, see 42 U.S.C. § 18031(i)(1), and neither organization employs individuals working as federal navigators. Absent evidence to support the district court's finding that these entities are federal navigators, we limit the scope of our preemption inquiry to CACs and consider only those federal laws and regulations applicable to CACs.

operating in [Missouri].”[4]  Mo. Rev. Stat. § 376.2000.2(4).  The HIMIA includes licensing provisions, see, e.g., id. §§ 376.2004, 376.2006, and regulatory provisions, see, e.g., id. §§ 376.2002, 376.2008.  The regulatory provisions dictate what state navigators can do, see, e.g., id. § 376.2002.2, and more relevant to this appeal, what state navigators *cannot* do unless they are also licensed insurance producers, see, e.g., id. § 376.2002.3.  The HIMIA also includes a remedial provision, allowing Huff to impose restrictions on a state navigator’s license or levy a fine of up to $1000 for certain misconduct “or for other good cause.”  Id. § 376.2010.1.

The appellees brought the current suit seeking to enjoin preliminarily the HIMIA before its enforcement.  The appellees challenged several specific HIMIA provisions, including: the definition of state navigators, see id. § 376.2000.2(4); three “substantive provisions,” see id. §§ 376.2002.3(3), (5), 376.2008; and the “remedial provision,” see id. § 376.2010.1.

The district court granted the preliminary injunction, stopping the HIMIA’s enforcement against federal navigators and CACs.  Applying the familiar four-part test for preliminary injunctions, see Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981), the district court found the appellees were likely to succeed on the merits[5] because the ACA preempts the HIMIA.  The district court reasoned:

---

[4]All individuals within the HIMIA’s scope are also called “navigators.”  See Mo. Rev. Stat. § 376.2000.2(4) (defining “Navigator”).  To avoid confusion, we refer to the broadly defined Missouri navigators as “state navigators,” recognizing this phrase encompasses both federal navigators and CACs.

[5]As for the other named plaintiffs, the district court found it “ha[d] no basis for believing the other Plaintiffs [were] likely to demonstrate HIMIA imposes any restrictions or requirements upon them.  The Court therefore conclude[d] the other Plaintiffs ha[d] not demonstrated they [were] likely to succeed on the merits.”

[T]he Court is of the view that any attempt by Missouri to regulate the conduct of those working on behalf of the FFE is preempted. . . . Missouri has opted not to be in the health insurance exchange business. Having made the choice to leave the operation of the exchange to the federal government, Missouri cannot choose to impose additional requirements or limitations on the exchange. Doing so frustrates Congress' purpose of having HHS operate FFEs in states where no exchange exists.

Finding the other three prongs of the preliminary injunction test also favored the appellees, the district court issued the injunction "preliminarily enjoin[ing]" Huff "from enforcing HIMIA." Huff appeals, challenging the district court's conclusion that the appellees were likely to succeed on the merits. We affirm the district court's order enjoining the HIMIA's enforcement against CACs as to the three challenged substantive provisions—Mo. Rev. Stat. §§ 376.2002.3(3), (5) and 376.2008—but reverse to the extent the order applies to federal navigators or any other portion of the HIMIA.

## II. DISCUSSION

When granting a preliminary injunction, district courts apply "'a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest.'" Minn. Citizens Concerned for Life, Inc. v. Swanson, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (quoting Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 729 n.3 (8th Cir. 2008) (en banc)). "The decision to grant or deny a preliminary injunction rests within the discretion of the district court and will not be disturbed on appeal absent a showing of abuse of discretion." United States v. Gannaway, 536 F.2d 784, 786 (8th Cir. 1976). "When purely legal questions are presented, however, this court owes no special deference to the district court," Lankford v. Sherman, 451 F.3d 496, 504 (8th Cir. 2006), and we review "its legal conclusions de novo," Goss, 491 F.3d at 362.

## A. Preemption

"The general law of preemption is grounded in the Constitution's command that federal law 'shall be the supreme Law of the Land.'" In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig., 621 F.3d 781, 791 (8th Cir. 2010) (quoting U.S. Const. art. VI, cl. 2). "Congress does not cavalierly pre-empt state-law causes of action." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). "'In the interest of avoiding unintended encroachment on the authority of the States, . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption.'" Heart of Am. Grain Insp. Serv., Inc. v. Mo. Dep't of Agric., 123 F.3d 1098, 1103 (8th Cir. 1997) (quoting CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663-64 (1993)). We thus will not find a law preempted unless it "'was the clear and manifest purpose of Congress,'" which "'may be indicated through a statute's express language or through its structure and purpose.'" Aurora Dairy, 621 F.3d at 792 (quoting Medtronic, 518 U.S. at 485, and Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008)).

"Because the [ACA] contains an express preemption clause, we focus in the first instance on the plain language of the statute, because it 'necessarily contains the best evidence of Congress' pre-emptive intent.'" Chapman v. Lab One, 390 F.3d 620, 625 (8th Cir. 2004) (quoting CSX Transp., 507 U.S. at 664). Section 18041(d) of Title 42—titled "No interference with State regulatory authority"—states, "Nothing in this title shall be construed to preempt any State law that does not prevent the application of the provisions of this title." This preemption clause is a narrow one, and only those state laws that "hinder or impede" the implementation of the ACA run afoul of the Supremacy Clause. Black's Law Dictionary 1226 (8th ed. 2004) (defining "prevent").

The district court ignored § 18041(d)'s limited preemptive effect. After invalidating the licensing requirements in Mo. Rev. Stat. §§ 376.2002.1, 376.2004, and 376.2006—even though the appellees did not argue these provisions were

preempted—and two of the three challenged substantive provisions, the district court concluded "*any attempt* by Missouri to regulate" CACs and federal navigators was preempted by the ACA. (Emphasis added). Based on this conclusion, the district court held the ACA entirely preempts the HIMIA as it applies to federal navigators, CACs, and counselor designated organizations and then enjoined the enforcement of the HIMIA in total as to those individuals.

In so doing, the district court may have overlooked a tenet of Missouri law:

> The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Mo. Rev. Stat. § 1.140; see also id. § 376.2014.2 ("If any provision of [the HIMIA] or its application to any person or circumstance is held invalid by a court of competent jurisdiction or by federal law, the invalidity does not affect other provisions or applications of [the HIMIA] that can be given effect without the invalid provision or application. The provisions of [the HIMIA] are severable, and the valid provisions or applications shall remain in full force and effect."). Because the challenged portions of the HIMIA operate independently of the remainder of the law, only those provisions actually preempted should be invalidated.

Examining only those HIMIA provisions the appellees directly challenge, see Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004) (per curiam) (explaining a preliminary injunction "must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law'" (quoting Zepeda v. INS, 753 F.2d 719, 728 n.1 (9th Cir. 1983))), we find

Mo. Rev. Stat. §§ 376.2002.3(3), (5) and 376.2008, as applied to CACs, are likely preempted by federal law.[6] We uphold the district court's preliminary injunction only as to these three provisions.

### 1.     2014 Regulations

On July 28, 2014, six months after the district court issued its order, new HHS regulations became effective. These new regulations clarified the duties of CACs and specifically addressed the scope of 42 U.S.C. § 18041(d)'s preemption clause as applied to CACs. See 45 C.F.R. § 155.225(c), (d)(8); Patient Protection and Affordable Care Act; Exchange and Insurance Market Standards for 2015 and Beyond, 79 Fed. Reg. 30240, 30270-72 (May 27, 2014). Because the intervening regulations are relevant to the current dispute, as a threshold matter, we consider the new regulations' applicability in this case.

"'That a statute shall not be given retroactive effect, unless such construction is required by explicit language or by necessary implication, is a rule of general application.'" Molina Jerez v. Holder, 625 F.3d 1058, 1076 (8th Cir. 2010) (quoting United States v. St. Louis, S.F. & T. Ry. Co., 270 U.S. 1, 3 (1926)). But "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive. . . . '[R]elief by injunction operates *in futuro,*' and [] the plaintiff ha[s] no 'vested right' in the decree entered by the trial court."

---

[6]At oral argument, the appellees urged this court to enjoin the three substantive provisions, see id. §§ 376.2002.3(3), (5), 376.2008; the remedial provision, see id. § 376.2010.1; the definition of state navigators, see id. § 376.2000.2(4); and the grant of authority to navigators, see id. § 376.2002.2(2). Because the appellees "did not raise [the definition and grant of authority] claims in their brief, those claims are deemed abandoned." Rang v. Hartford Variable Annuity Life Ins. Co., 908 F.2d 380, 383 (8th Cir. 1990); cf. United States v. Johnson, 710 F.3d 784, 787 n.1 (8th Cir. 2013) (declining to address appellee's argument raised for the first time at oral argument). The claim concerning the remedial provision *was* briefed and is discussed in Part B, infra.

Landgraf v. USI Film Prods., 511 U.S. 244, 273-74 (1994) (quoting Am. Steel Foundries v. Tri-City Cent. Trades Council, 257 U.S. 184, 201 (1921)); accord Viacom Inc. v. Ingram Enter., Inc., 141 F.3d 886, 888-90 (8th Cir. 1998). Although we examine regulations, not statutes, these same principles apply. See, e.g., United States v. Santee Sioux Tribe of Neb., 324 F.3d 607, 615 n.4 (8th Cir. 2003) (applying "newly-amended regulations" under Landgraf); Grove v. Fed. Bureau of Prisons, 245 F.3d 743, 747 (8th Cir. 2001) (citing Landgraf and considering intervening regulations). Because the appellees seek only forward-looking injunctive relief, we consider the 2014 regulations in rendering our decision.

To the extent Huff claims HHS exceeded its authority to regulate when promulgating the 2014 regulations, this argument is misplaced. In the ACA, Congress delegated to HHS broad authority to "establish standards for navigators," 42 U.S.C. § 18031(i)(4)(A), and to "issue regulations setting standards for . . . the establishment and operation of Exchanges [and] such other requirements as the Secretary determines appropriate," id. § 18041(a)(1)(A), (D). As the Supreme Court has explained, its "jurisprudence has been driven by a practical understanding that in our increasingly complex society . . . Congress simply cannot do its job absent an ability to delegate power under broad general directives." Mistretta v. United States, 488 U.S. 361, 372 (1989) (citing Opp Cotton Mills, Inc. v. Admin. of Wage & Hour Div. of Dept. of Labor, 312 U.S. 126, 145 (1941)). Given the wide discretion afforded HHS, it was well within the Secretary's authority to promulgate these particular regulations.

That HHS had the authority to issue the regulations does not determine whether the regulations can preempt the HIMIA. "[A]n agency regulation with the force of law can pre-empt conflicting state requirements." Wyeth v. Levine, 555 U.S. 555, 576 (2009). The 2014 regulation describing the duties of CACs, see 45 C.F.R. § 155.225(c)(1), is a legislative rule carrying the force of law and can preempt the HIMIA. See Iowa League of Cities v. EPA, 711 F.3d 844, 873 (8th Cir. 2013); Drake

-9-

v. Honeywell, Inc., 797 F.2d 603, 607 (8th Cir. 1986).[7] Section 155.225(d)(8), however, "simply state[s] what the administrative agency thinks the [ACA's preemption clause] means," and thus is an interpretive rule that does "not have the force of law." Iowa League of Cities, 711 F.3d at 873 (quotations omitted).

Yet despite Huff's contentions to the contrary, we may accord § 155.225(d)(8) some weight. See Geier v. Am. Honda Motor Co., 529 U.S. 861, 883 (2000). The question of whether § 155.225(d)(8) is to be afforded deference falls squarely under the reasoning of Wyeth. In Wyeth, the Supreme Court refused to defer to a statement in the preamble of a Food and Drug Administration (FDA) regulation proclaiming that its rules preempted state tort law, and the Court noted it had "not deferred to an agency's *conclusion* that state law is pre-empted." Wyeth, 555 U.S. at 576. The Supreme Court explained:

> While agencies have no special authority to pronounce on pre-emption absent delegation by Congress, they do have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. The weight we accord the agency's explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness.

Id. at 576-77 (internal citations and quotation omitted).

Although Wyeth suggests we may give some weight to 45 C.F.R. § 155.225(d)(8), we need not do so here because HHS's understanding of the ACA's

---

[7]Although we consider an amendment to the original rule, "'an amendment to a legislative rule must itself be legislative.'" Iowa League of Cities, 711 F.3d at 875 (quoting Nat'l Family Planning & Reproductive Health Ass'n v. Sullivan, 979 F.2d 227, 235 (D.C. Cir. 1992)).

preemptive scope is consistent with our independent preemption determination. The July 28, 2014 regulations reenforce our determination that the ACA preempts the three challenged substantive provisions of the HIMIA, but these new regulations do not compel us to reach this result, nor do they supplant our independent preemption analysis.

With these principles in mind, we turn to the challenged provisions.

### 2. Missouri Revised Statutes § 376.2002.3(3)—No Advice

Mo. Rev. Stat. § 376.2002.3(3) states, "[A] navigator shall not . . . [p]rovide advice concerning the benefits, terms, and features of a particular health plan or offer advice about which exchange health plan is better or worse for a particular individual or employer." The appellees argue this provision conflicts with a CAC's federally mandated duty to "[p]rovide information to individuals and employees about the full range of [Qualified Health Plan][8] options and insurance affordability programs for which they are eligible," including the requirement that CACs "clarify[] the distinctions among health coverage options." 45 C.F.R. § 155.225(c)(1). Huff attempts to differentiate between "advice" and "information" and argues there is no conflict because under the HHS regulations, CACs can give only information, not advice.

In support of his position, Huff posits "advice" means a "'recommendation regarding a decision or course of conduct.'" (Quoting Webster's Third New International Dictionary 32 (1993)). Huff explains under his definition, CACs only violate § 376.2002.3(3) if they explicitly state, "'I recommend,' or 'this is the plan you

---

[8]Qualified Health Plans (QHPs) are plans offered through an exchange. See 45 C.F.R. § 155.20 ("Qualified health plan or QHP means a health plan that has in effect a certification that it meets the standards . . . issued or recognized by each Exchange through which such plan is offered.").

should get,' or 'these are the features you should get.'" Under Missouri law, "'the primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute.'" E&B Granite, Inc. v. Dir. of Revenue, 331 S.W.3d 314, 318 (Mo. 2011) (en banc) (quoting Brinker Mo., Inc. v. Dir. of Revenue, 319 S.W.3d 433, 437-38 (Mo. 2010) (en banc)). While "[t]he plain meaning of a term may be derived from a dictionary," id., the ultimate construction must "'be reasonable and logical,'" Gash v. Lafayette Cnty., 245 S.W.3d 229, 232 (Mo. 2008) (en banc) (quoting Donaldson v. Crawford, 230 S.W.3d 340, 342 (Mo. 2007) (en banc) (per curiam)).

Huff's confined reading of § 376.2002.3(3) is unreasonable when the HIMIA is read as a whole. The subsection directly following the HIMIA's no-advice provision—Mo. Rev. Stat. § 376.2002.3(4)—forbids CACs from "[r]ecommend[ing] or endors[ing] a particular health plan or advis[ing] consumers about which health plan to choose." If § 376.2002.3(3) is read only to ban CACs from providing a recommendation, it would make § 376.2002.3(4) superfluous. "This result would defy the norm of statutory construction that every word, clause, sentence, and provision of a statute must have effect. [We] presume[] that the legislature did not insert idle verbiage or superfluous language in a statute." Civil Serv. Com'n of St. Louis v. Members of Bd. of Aldermen of St. Louis, 92 S.W.3d 785, 788 (Mo. 2003) (en banc) (quotations omitted).

Given § 376.2002.3(3) cannot be read to prohibit only the giving of a recommendation, we turn to the next dictionary definition of advice: "information or notice given." Webster's Third New International Dictionary 32 (1993). Under this definition, § 376.2002.3(3) arguably prevents CACs from giving information about the various health plans offered through the exchange. The appellees thus are likely to succeed on the merits in arguing the no-advice provision, § 376.2002.3(3), directly controverts the duties outlined in 45 C.F.R. § 155.225(c)(1).

-12-

The 2014 HHS regulations confirm our conclusion. HHS considers "[r]equirements that would prevent [CACs] from providing advice regarding substantive benefits or comparative benefits of different health plans" preempted. 45 C.F.R. § 155.225(d)(8)(iii). Huff counters this provision by again claiming CACs are only authorized to give information, not advice. We are not convinced. It is likely the appellees will succeed in proving Mo. Rev. Stat. § 376.2002.3(3) prevents the application of the ACA by imposing upon a CAC's duty to provide information about different health insurance plans and to clarify the distinctions among these plans. See 45 C.F.R. § 155.225(c)(1).

### 3. Missouri Revised Statutes § 376.2002.3(5)—No Off-Exchange Information

The HIMIA also forbids CACs from giving "any information or services related to health benefit plans or other products not offered in the exchange." Mo. Rev. Stat. § 376.2002.3(5). But CACs must "clarify[] the distinctions among health coverage options, *including QHPs* [and] help[] consumers make informed decisions during the health coverage selection process." 45 C.F.R. § 155.225(c)(1) (emphasis added). The appellees argue the HIMIA's ban on providing information about off-exchange health plans prevents them from fulfilling these duties.

Contrary to Huff's claims, the relevant laws and regulations do not limit CACs to discussing only those plans offered on the exchange. As the appellees explained in their brief and at oral argument, there are situations where CACs must provide information about an off-exchange health plan to give consumers a full understanding of their options. For example, if a consumer already covered by an off-exchange insurance plan seeks information about switching to an on-exchange plan, the CAC assisting the consumer necessarily must discuss the off-exchange plan to "clarify[] the distinctions" between that plan and exchange plans to "help [the consumer] make informed decisions during the health coverage selection process." 45 C.F.R.

§ 155.225(c)(i). Further, the clause "clarif[ies] the distinctions among health coverage options, *including QHPs*," id. (emphasis added), suggests CACs must inform clients of the differences between a number of health care plans, including—but not limited to—those offered through the exchange.

It is likely the appellees will succeed in showing the HIMIA requirement that state navigators refrain from providing information about health insurance plans not offered through the exchange may prevent CACs from informing consumers about the full range of health care available to them and "clarifying the distinctions among health coverage options," 45 C.F.R. § 155.225(c)(i).

### 4.     Missouri Revised Statutes § 376.2008—Consult an Insurance Producer

Mo. Rev. Stat. § 376.2008 requires that "[u]pon contact with a person who acknowledges having existing health insurance coverage obtained through an insurance producer, a [state] navigator shall advise the person to consult with a licensed insurance producer regarding coverage in the private market." It is likely the appellees will be able to demonstrate this provision contravenes a CAC's duty to provide "fair, impartial, and accurate information" about insurance options, 45 C.F.R. § 155.225(c)(1).

Under Missouri law, the term "insurance producer" includes both insurance brokers and agents. See Mo. Rev. Stat. § 375.012.3. Insurance agents in Missouri generally represent the interests of insurance companies, not the insured, and thus owe no duty to the insured. See Emerson Electric Co. v. Marsh & McLennan Cos., 362 S.W.3d 7, 12 (Mo. 2012) (en banc). Insurance brokers *do* owe fiduciary duties to the insured, but these duties are limited and do not require brokers to provide complete and impartial information. See id. at 9-10. For example, in Emerson Electric, the Missouri Supreme Court found a broker, who was paid by commission, had no "duty to find insureds the lowest possible cost insurance available to meet their needs." Id.

-14-

at 9. Sending consumers to insurance providers may prevent CACs from providing those consumers with only "fair, impartial, and accurate information," 45 C.F.R. § 155.225(c)(1).

In addition, the 2014 regulations declare as preempted any "[r]equirements that [CACs] refer consumers to other entities not required to provide fair, accurate, and impartial information," which apparently includes Missouri insurance producers. 45 C.F.R. § 155.225(d)(8)(i). Huff contends the HIMIA does not prevent the application of § 155.225(d)(8)(i) because it does not require CACs to "refer" clients to insurance producers and instead requires CACs to "advise [clients] to consult with" insurance producers, Mo. Rev. Stat. § 376.2008. This distinction is unpersuasive. As written, the HIMIA requires CACs to recommend certain clients consult with private insurance producers—an act falling within the plain meaning of "refer." Webster's Third New International Dictionary 1907 (1993) (defining refer as "to send [or] direct for treatment, aid, information, or decision").

As with the other provisions discussed, it is likely the appellees can establish Mo. Rev. Stat. § 376.2008 interferes with federal law by preventing CACs from performing their federally required duties.[9]

---

[9]The appellees express concern that §§ 376.2002.3(3), (5) and 376.2008 may also impose upon their freedom of speech, as guaranteed by the First Amendment. Because we find these sections are likely preempted by federal law, we do not reach the First Amendment issue.

**B.     Missouri Revised Statutes § 376.2010.1—Due Process Void for Vagueness**

Because it enjoined the entire act on preemption grounds, the district court did not reach the appellees' due process claim. The appellees challenge the HIMIA's remedial provision—Mo. Rev. Stat. § 376.2010.1—as being void for vagueness in violation of the Due Process Clause. Section 376.2010.1 states:

> The director may place on probation, suspend, revoke, or refuse to issue, renew, or reinstate a navigator license or may levy a fine not to exceed one thousand dollars for each violation, or any combination of actions, for any one or more of the causes listed in section 375.141, 375.936 *or for other good cause*.

(Emphasis added). The appellees claim the phrase "or for other good cause" is impermissibly vague, in violation of due process, because it "does not provide fair notice of what is prohibited" and "creates the opportunity for arbitrary and discriminatory enforcement."

"'It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.'" Gallagher v. City of Clayton, 699 F.3d 1013, 1021 (8th Cir. 2012) (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)); accord Maynard v. Cartwright, 486 U.S. 356, 361 (1988) ("Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis."). Although the appellees argue this provision will chill speech because it "empowers the Director to penalize individuals who wish to talk about insurance but not to be licensed as navigators," this argument is based on a misreading of § 376.2010.1.

The appellees interpret the statute as penalizing individuals who violate the HIMIA's other sections. However, § 376.2010.1 only allows the director to limit a

-16-

state navigator's license for misconduct such as fraud, misrepresentation, misappropriation of funds, and unfair practices. <u>See</u> Mo. Rev. Stat. §§ 375.141.1, 375.936. The appellees' fear that § 376.2010.1 empowers the director to punish them merely for engaging in the speech required of a CAC is unfounded.

Because § 376.2010.1 does not implicate the First Amendment "in light of the facts of the case at hand," <u>Maynard</u>, 486 U.S. at 361, the appellees are not likely to succeed on the merits of their facial vagueness claim. <u>See</u> <u>Gallagher</u>, 699 F.3d at 1021-22.

## III. CONCLUSION

We affirm the order preliminarily enjoining the enforcement of Mo. Rev. Stat. §§ 376.2003.3(3), (5) and 376.2008 against CACs, and we vacate the remainder of the preliminary injunction, remanding the case back to the district court.

_____