In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3634

THE PEOPLES GAS LIGHT AND COKE
COMPANY,

*Plaintiff-Appellant,*

*v.*

BEAZER EAST, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 2434 — **George M. Marovich**, *Judge.*

ARGUED MAY 26, 2015 — DECIDED SEPTEMBER 21, 2015

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant, The Peoples Gas Light and Coke Company ("Peoples"), brought suit against defendant-appellee, Beazer East, Inc. ("Beazer"), to recover costs incurred by Peoples in conducting environmental investigation and removal activities at a property, partially owned by Peoples, known as the Crawford Station site.

## I. BACKGROUND

This case requires the interpretation of a contract entered into in 1920 between Peoples and Beazer's predecessor, Koppers. Under the terms of the contract, Koppers agreed to "organize … a corporation empowered by its charter to build and to operate a by-product coke plant and a plant for the manufacture of carbureted water gas." The corporation was to be called Chicago By-Product Coke Company ("Chicago Coke" or "Coke"). Coke then was to enter into a contract with Koppers, under the terms of which Koppers would agree to build and operate for a period of years a coke plant located at Crawford Station in Chicago, Illinois (the "coke plant"), "for and in behalf of and in the name of 'Coke,'" using Koppers' patented coke-oven technology. To pay for construction, Coke issued $13,000,000 of first mortgage bonds to Koppers and $600,000 of second mortgage bonds. Peoples agreed to purchase all of the gas and coke manufactured at the plant for distribution to consumers.

Operations at the coke plant began in October 1921. Seven years later, Peoples acquired the assets of Coke. Koppers continued to operate the coke plant until 1938, when Peoples purchased the stock of Coke and took over operations until 1956. Today, some of the land is still owned by Peoples.

In recent years, Peoples began working with the United States Environmental Protection Agency ("EPA") and the Illinois Environmental Protection Agency to investigate environmental contamination at the Crawford Station site. Peoples eventually entered into three agreements with the EPA, beginning in 2007 when they entered an "Administrative

Settlement Agreement and Order on Consent" ("2007 AOC"). This agreement required Peoples "to conduct an Engineering Evaluation and Cost Analysis … of alternative response actions … to address the environmental concerns in connection with … Crawford Station." In 2008, Peoples and the EPA entered a second "Administrative Settlement Agreement and Order on Consent" ("2008 AOC"), which concerned "the preparation and performance of a remedial investigation and feasibility study" at the Crawford Station site. Then, in 2011, Peoples and the EPA entered a third "Administrative Settlement Agreement and Order on Consent" ("2011 AOC"), which provided "for the performance of a removal action by [Peoples] and the reimbursement of certain response costs by the United States" in connection with the Crawford Station site. As a result of the investigation and removal activities at the Crawford Station site, Peoples has incurred over $70,000,000 in costs.

On April 4, 2014, Peoples filed suit against Beazer to recover costs incurred in connection to the aforementioned environmental investigation and removal activities. Count I of the two-count complaint was for cost recovery pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a); Count II was for contribution pursuant to CERCLA § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B). Beazer moved to dismiss the complaint on three grounds: (1) Peoples had contractually released Koppers of all liability of any character for its operation of the coke plant; (2) Peoples was limited to a contribution claim; and (3) Peoples' contribution claim was time-barred with respect to costs incurred under the 2007 and 2008 AOCs.

On September 8, 2014, the district court partially granted Beazer's motion to dismiss. The court dismissed with prejudice

Count I of the complaint, finding that Peoples had resolved its liability to the United States via administrative settlement and, therefore, only had a claim for contribution under CERCLA § 113(f)(3)(B). As to Count II, the district court dismissed with prejudice Peoples' claims for contribution for costs arising out of the 2007 and 2008 AOCs. The court held that each AOC was subject to the three-year statute of limitations set forth in 42 U.S.C. § 9613(g)(3)(B), thus Peoples' claims were time-barred. The court held Peoples' contribution claim stemming from the 2011 AOC was not time-barred, but dismissed with prejudice Peoples' contribution claim based on Koppers' operator liability. The court denied Beazer's motion as to Peoples' claim based on ownership liability. On November 3, 2014, the district court conducted a Status Hearing where Peoples moved to voluntarily dismiss the remaining contribution claim in Count II. The district court granted this oral motion and entered judgment in favor of Beazer.

On appeal, Peoples contests the district court's dismissal of Count II of its complaint.[1] Peoples presents two issues on appeal: (1) that the district court erred in holding that the 1920 agreement bars Peoples' contribution claims under CERCLA § 113(f)(3)(B) based on Koppers' status as an operator; and (2) that the district court erred in holding that Peoples' contribution claims arising out of the 2007 and 2008 AOCs are time-barred.

---

[1] Because Peoples voluntarily dismissed the part of Count II relating to its claim for contribution arising out of Koppers' ownership liability, it does not appeal this issue.

## II. ANALYSIS

CERCLA was passed in 1980 "to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington Northern & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009) (internal citations omitted). There are four classes of potentially responsible parties upon whom CERCLA imposes liability: (1) present owners and operators of facilities; (2) past owners or operators of the facility at the time of the disposal of a hazardous substance; (3) arrangers of the disposal of hazardous substances at the facility; and (4) certain transporters of hazardous substances. 42 U.S.C. § 9607(a). The parties do not dispute Koppers' role as an operator during the relevant period.

Section 107(e)(1) of CERCLA provides:

> No indemnification, hold harmless, or similar agreements or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1).

At first blush, this section appears internally inconsistent. However, we have joined other federal courts of appeals in reconciling these two sentences by construing them to mean

that responsible parties may not transfer their CERCLA liability, but may obtain indemnification for that liability. *See PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 613 (7th Cir. 1998) ("Parties are free … to allocate [CERCLA] expenses between themselves by contract."); *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321 (7th Cir. 1994); *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 342–43 (7th Cir. 1994) (holding that § 107(e)(1) "does not outlaw indemnification agreements, but merely precludes efforts to divest a responsible party of his liability"); *see also SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 158 (3rd Cir. 1996) ("[R]esponsible parties can lawfully allocate CERCLA response costs among themselves while remaining jointly and severally liable to the government for the entire clean-up."); *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206, 211 (3rd Cir. 1994).

Peoples does not question this court's interpretation of § 107(e)(1). However, it argues that the 1920 agreement, which was signed well-before CERCLA was passed, does not relieve Beazer (as Koppers' successor) of its liability for contribution under CERCLA. It is well-established that "[a] party may indemnify another party for liability arising out of a law not in existence at the time of contracting." *Kerr-McGee*, 14 F.3d at 327. However, where such a contractual assignment of liability pre-dates CERCLA, courts will look to see "whether an indemnification provision is either specific enough to include CERCLA liability or general enough to include any and all environmental liability which would, naturally, include subsequent CERCLA claims." *Beazer East*, 34 F.3d at 211. Peoples argues that the 1920 agreement between Beazer's predecessor Koppers and Peoples contains neither an unquali-

fied, broad release of environmental liability nor a specific release of environmental liability sufficient to absolve Beazer of its CERCLA liability.

We apply state law to determine whether a particular indemnification provision encompasses contribution costs under CERCLA. *See LaSalle Nat'l Trust, N.A. v. ECM Motor Co.,* 76 F.3d 140 (7th Cir. 1996). Here, we apply Illinois law to construe the terms of the 1920 agreement. Under Illinois law, the court's "primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart,* 226 Ill. 2d 208, 232 (Ill. 2007). The court must first "look to the language of [the] contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent," and construe the contract "as a whole, viewing each part in light of the others." *Id.* at 233. The court should consider extrinsic evidence to ascertain the parties' intent only where the language of the contract is reasonably or fairly susceptible to more than one meaning. *Id.*

Paragraph 48 of the 1920 agreement states:

> The obligation to be assumed by "Koppers" with respect to the operation of the proposed By-Product Coke Plant shall be limited to operating or supervising the operation thereof for and in behalf of and in the name of "Coke," without liability of any character on the part of "Koppers," except as expressly assumed under the terms of this contract, and shall cover the period contemplated by paragraphs 54 to 60 inclusive hereof. "Koppers" shall assume full responsibility for the efficient operation and for the maintenance of the

plant in good working order during the period of operation by "Koppers," but the expense of such operation and maintenance or loss incident thereto shall be borne by "Coke" as hereinafter provided.

Looking to the plain language of the contract alone, and construing the contract as a whole, we agree with the district court that the 1920 agreement is unambiguous and that its language is broad enough to absolve Beazer of liability for contribution costs under CERCLA. The first sentence of paragraph 48 explicitly states that Koppers' obligation to operate or supervise the operation of the coke plant was assumed *"without liability of any character on the part of 'Koppers,'* except as expressly assumed under the terms of this contract" (emphasis added). Peoples argues that the second sentence in paragraph 48, which states, "'Koppers' shall assume full responsibility for the efficient operation and for the maintenance of the plant in good working order during the period of operation by 'Koppers,'" identifies liabilities that were "expressly assumed" by Koppers. This argument is flawed for a number of reasons.

In the first place, under Peoples' interpretation of this language, the second sentence of paragraph 48 reinstitutes the very same liability that the first sentence of paragraph 48 released Koppers of with respect to its obligation to operate and supervise the operation of the plant. Thus, Peoples' interpretation would render the first sentence of the paragraph meaningless, and courts should not "interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning

of the language used." *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (Ill. 2011).

Peoples' characterization of the first clause of the second sentence as an assumption of liability cannot be reconciled with the second clause of the same sentence, which states, "but the expense of such operation and maintenance *or loss incident thereto* shall be borne by 'Coke.'" Where possible, courts should construe a contract so that its provisions are harmonized and not in conflict. *See Henderson v. Roadway Exp.*, 720 N.E.2d 1108, 1111 (Ill. App. Ct. 1999). The fact that "Coke," not Koppers, was responsible for any "loss incident" to the operation and maintenance of the plant is in direct conflict with Peoples' interpretation that Koppers assumed liability for the operation and maintenance of the plant. Peoples contends that there is no direct conflict in these two clauses because: (1) losses related to environmental liability would have been outside the parties' contemplation in 1920; and (2) the phrase "loss incident thereto" refers to expenses in excess of profits, not to long-term, future liability. Putting aside the fact that Peoples cannot support such a narrow definition of the term "loss," its argument that the contract could not have contemplated future liabilities is illogical. A party's intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract. *Thompson,* 241 Ill. 2d at 441. Viewing the contract as a whole, it is clear that the 1920 agreement was signed before the financing, construction, and operation of the plant occurred, thus *every* liability contemplated by the contract necessarily was a *future* liability.

Actually, the terms of the 1920 agreement indicate that the second sentence of paragraph 48 acts not as an assumption of liability on the part of Koppers or as a limitation on the broad release language of the first sentence of paragraph 48, but as an elaboration of the limited scope of Koppers' obligations as an operator. This is consistent with the rest of the agreement, which establishes that Koppers' obligation was limited to financing and operating the coke plant for a limited amount of time until it had been repaid. This interpretation is also reinforced by the inclusion of the language, "for and in behalf of and in the name of 'Coke,'" which indicates the parties' intent to distance Koppers from any ultimate liability for the operation of the plant. Finally, it is supported by the language of paragraph 63 of the agreement, where Koppers explicitly agreed to:

> … *covenant and agree to keep and save harmless and to indemnify* "Peoples Gas" and "Coke," … from and against all and every demand or demands of any nature or kind, and from the payment of any royalties, damages, losses or expense, claimed or established against "Peoples Gas" or "Coke," … for or growing out of any infringement upon Letters Patent of the United States, by or in respect to, or for or on account of the adoption or use of any patented invention, article, appliance, machinery or process which is furnished by or through "Koppers" and adopted or used in or about the construction or operation of said plants or any part thereof, … (emphasis added).

Unlike the language used in the second sentence of paragraph 48, this language is an express assumption of liability.

However, since it relates to patents, it cannot be said to materially alter the broad release of liability contained in paragraph 48. Consistent with the contract as a whole, therefore, we agree with the district court that the language of paragraph 48 unambiguously absolves Beazer of any and all liability resulting from its operation of the coke plant.

We also agree that this language is broad enough to include contribution costs under CERCLA. Peoples argues that a pre-CERCLA contractual release must be "unqualified" and not contain any exceptions. However, Peoples' argument misstates federal precedent on this issue. Federal courts look to whether a pre-CERCLA indemnification clause is specific enough to include CERCLA liability or *general enough* to include any and all environmental liability. *Beazer East*, 34 F.3d at 211. The 1920 agreement contains clear and unequivocal language that Koppers' obligation to operate the coke plant is assumed "without liability of *any character* on the part of 'Koppers'" (emphasis added). This is precisely the kind of broad and general release language that has been construed by courts to encompass CERCLA liability. *See E.I. Du Pont de Nemours and Co. v. United States*, 365 F.3d 1367, 1373 (Fed. Cir. 2004) (holding that an indemnification clause reciting the government's agreement to hold a contractor "harmless against any loss, expense, or damage" arising out of the performance of certain work and not due to the personal failure of the contractor to exercise good faith covered CERCLA liability); *SmithKline Beecham Corp.*, 89 F.3d at 159–60 (holding that a contract that indemnified the buyer against "all material liabilities relating to the conduct of the business prior to the First Closing Date … which are not assumed by the Buyer" under a different

subsection contained the "sort of broad language in pre-CERCLA contracts" that encompasses CERCLA liability); *Purolator Prods. Corp. v. Allied Signal, Inc.*, 772 F. Supp. 124 (W.D. N.Y. 1991) (holding that a provision indemnifying for "all liabilities and obligations … relating to or arising out of the Assets" was expansive enough to include CERCLA liability); *American Nat'l Can Co. v. Kerr Glass Mfg. Corp.*, No. 89-C-0168, 1990 WL 125368, *3 (N.D. Ill. August 22, 1990) (indemnity provision covering "any claim of any kind or nature whatsoever with respect to the business … arising out of the facts or events occurring prior to the Closing Time" was sufficiently broad to encompass future CERCLA liability). It is readily apparent from a plain reading of paragraph 48 that the parties sought to release Koppers from all future claims, including environmental liability, arising out of Koppers' operation of the plant. Accordingly, we agree with the district court that the language of the 1920 agreement bars Peoples' claim for contribution from Koppers under CERCLA § 113(f)(3)(B).

Because we affirm the district court's determination that the 1920 agreement bars Peoples' contribution claims against Beazer, we need not address whether Peoples' contribution claims arising out of the 2007 and 2008 AOCs are time-barred.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the dismissal of Peoples' claims against Beazer for contribution under CERCLA § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B).