In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 20-2236 & 20-2709

RALPH HOLMES, *et al.*,

*Plaintiffs-Appellants*,

*v.*

SALVADOR A. GODINEZ, Acting Director
of Illinois Department of Corrections,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-cv-2961 — **Young B. Kim**, *Magistrate Judge*.

ARGUED JANUARY 22, 2021 — DECIDED MARCH 16, 2021

Before RIPPLE, KANNE, and SCUDDER, *Circuit Judges*.

KANNE, *Circuit Judge*. This is a straightforward contract interpretation case. Plaintiffs are Illinois prison inmates with hearing problems. They executed a judicially enforceable Settlement with the Illinois Department of Corrections ("IDOC") that requires IDOC to provide them with certain audiological care.

Two provisions of the Settlement are at issue: one grants the court power to award attorney fees to Plaintiffs if IDOC "has been in substantial non-compliance" with the Settlement, and the other requires IDOC to refer inmates in need for an audiological evaluation by a licensed audiologist.

Plaintiffs sued to enforce the Settlement and for attorney fees based on past violations of it. The district court obliged.

The district court correctly awarded attorney fees to Plaintiffs based on IDOC's "substantial non-compliance" with the Settlement of referring about 700 inmates for inadequate evaluations. But the court incorrectly determined that IDOC was obligated to ensure that its prison inmates receive audiological evaluations (or re-evaluations) within a set timeframe—the Settlement contains no such requirement. We therefore affirm in part and reverse in part the decision of the district court, and we terminate our stay of the district court's order.

## I. BACKGROUND

In the underlying class action, Plaintiffs alleged on behalf of deaf and hard-of-hearing inmates in IDOC custody that IDOC unlawfully denied them "the assistance they need to communicate effectively and participate in IDOC programs and services." The parties executed a Settlement in July 2018 to resolve their dispute.

Among other things, the Settlement requires IDOC to screen inmates for hearing problems, to refer inmates in need to a licensed audiologist for a more thorough audiological evaluation, and then to maintain records of inmates' evaluations and provide inmates with certain care according to the results of their evaluations.

For about a year after the court approved the Settlement, IDOC admits that it incorrectly referred about 700 inmates to licensed hearing instrument dispensers ("LHIDs")—i.e., hearing-aid salesmen—instead of audiologists for their audiological evaluations (the "LHID violations"). IDOC discontinued the practice in July 2019 after the parties reached an out-of-court agreement to resolve it.

In 2020, Plaintiffs filed a motion to enforce the Settlement arguing that IDOC is not ensuring that the audiological evaluations are completed within a reasonable time period; they allege there is as much as an eight-month gap between their screenings and their audiological evaluations. Plaintiffs also sought attorney fees for the investigation and resolution of the LHID violations.

This motion to enforce the Settlement and for attorney fees involved two aspects of the agreement. First, the Settlement requires IDOC to ensure that inmates whose hearing screenings show that they are deaf or hard of hearing are "referred to an audiologist for an Audiological Evaluation at the earlier of: (a) thirty (30) days after arrival to their home facility; or (b) 45 days after being admitted into IDOC custody." Second, the Settlement states that if the court finds that IDOC "has been in substantial non-compliance" with the Settlement, the court "has the power to enter, and shall enter, whatever orders are necessary to ensure compliance with the terms of the Settlement." That power includes awarding "reasonable attorney's fees for any work expended by Class Counsel in investigating and litigating such non-compliance."

The district court concluded that IDOC was in substantial non-compliance with the Settlement through the LHID violations, and it thus ordered IDOC to pay Plaintiffs about $54,000

in attorney fees for the investigation and resolution of those violations (the "attorney-fee decision").

The district court also determined that the Settlement requires IDOC to ensure the audiological evaluations are completed within a reasonable timeframe, which it defined as 90 days after a referral (the "evaluation decision").

Finally, the court ordered IDOC to ensure that the 700 inmates who received inadequate evaluations by LHIDs were given proper audiological evaluations by August 28, 2020—about twelve weeks after the date of the court's order (the "re-evaluation decision").

IDOC appeals these three decisions. We stayed the effect of evaluation and re-evaluation decisions during the pendency of this appeal, and we will address those two decisions in tandem.

## II. ANALYSIS

The parties agree that because the Settlement is judicially enforceable, it is a consent decree. *Doe v. Cook County*, 798 F.3d 558, 563 (7th Cir. 2015) ("[I]f an agreement is judicially enforceable—that is, if a violation means anything other than restarting the litigation on the merits—the agreement must be treated as a 'consent decree' … .").

We review a district court's interpretation of a consent decree *de novo. In re Trans Union Corp. Privacy Litig.*, 741 F.3d 811, 816 (7th Cir. 2014). Plaintiffs request that we show deference to the district court's order because we have "sometimes said that we will give an unspecified amount of deference to a district court's interpretation [of a consent decree] when that court has overseen the litigation for a long time and is familiar with the details of what may be a complex arrangement." *Id*.

But *de novo* review is appropriate here because we are interpreting the terms of a consent decree that sets out the parties' "substantive rights and obligations." *Id.*

"For purposes of construction, a judicially approved consent decree is essentially a contract." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002) (citing *United States v. City of Northlake*, 942 F.2d 1164, 1167 (7th Cir. 1991)). It is thus interpreted according to principles of state contract law. *City of Northlake*, 942 F.2d at 1167.

Under Illinois law, which applies here, "the court's 'primary objective in construing a contract is to give effect to the intent of the parties.' The court must first 'look to the language of [the] contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent' … ." *Peoples Gas Light & Coke Co. v. Beazer E., Inc.*, 802 F.3d 876, 881 (7th Cir. 2015) (alteration in original) (citation omitted) (quoting *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). "[A] court will not rewrite a contract to suit one of the parties … ." *Wright v. Chi. Title Ins. Co.*, 554 N.E.2d 511, 514 (Ill. App. Ct. 1990) (citing *A.A. Conte, Inc. v. Campbell–Lowrie–Lautermilch Corp.*, 477 N.E.2d 30 (Ill. App. Ct. 1985)). Illinois law imposes "a strong presumption against provisions that easily could have been included in the contract but were not." *Id.* (citing *Braeside Realty Tr. v. Cimino*, 479 N.E.2d 1031 (Ill. App. Ct. 1985); *Ebrahim v. Checker Taxi Co.*, 471 N.E.2d 632 (Ill. App. Ct. 1984)). And "a court will not add terms simply to reach a more equitable agreement." *Id.* (citing *Nat'l Tea Co. v. Am. Nat'l Bank & Trust Co. of Chi.*, 427 N.E.2d 806 (Ill. App. Ct. 1981)).

The district court followed these principles when it awarded attorney fees to Plaintiffs but did not precisely

follow them when it ordered IDOC to ensure that audiological evaluations be completed within a certain timeframe.

*A. The Attorney-Fee Decision*

Once more, the Settlement states that if the court finds that IDOC "has been in substantial non-compliance with the Settlement Agreement, then the court has the power to enter, and shall enter, whatever orders are necessary to ensure compliance with the terms of the Settlement." That power includes awarding "reasonable attorney's fees for any work expended by Class Counsel in investigating and litigating such non-compliance."

IDOC admits that it was in "substantial non-compliance" with the Settlement when it committed the LHID violations. Thus, we easily conclude that the court had authority under the Settlement to award attorney fees for the investigation and resolution of that past non-compliance in order to ensure that it does not repeat.

IDOC provides two counter arguments, but neither is persuasive. First, IDOC argues that Plaintiffs should not have been permitted to seek attorney fees because the Settlement provides that the parties "shall meet and confer and attempt to resolve any issues of potential non-compliance prior to such issues being the subject of any motion with the Court." This argument is not well developed and, as we're able to construe it, is not convincing. IDOC correctly notes that the parties did meet and confer to resolve the LHID violation, so the meet-and-confer provision was satisfied. But IDOC still appears to argue that because the parties resolved the issue on their own, the court had no power to then enter the attorney-fee award. We don't read the Settlement that way. Nothing in

it prevents Plaintiffs from asking the court for an award of the fees incurred during the parties' out-of-court negotiations. To the contrary, it explicitly provides that the court "may award reasonable attorney's fees for *any* work expended by Class Counsel in investigating and litigating … non-compliance."

Second, IDOC argues that because the court must find that the Department "has been"—not *had* been—in non-compliance, there must be an "ongoing" violation for the court to award attorney fees; the violation here, though, ceased in 2019. This argument is unconvincing because the plain and ordinary usage of "has been" is to refer to events that are on-going *or* that were completed in the past. The Chicago Manual of Style ¶ 5.132 (17th ed. 2017) ("The present-perfect tense is formed by using *have* or *has* with the principal verb's past participle … . It denotes an act, state, or condition that is now completed or continues up to the present [E.g., she has] put away the clothes.").

This plain meaning applies here. *Peoples Gas Light & Coke Co.*, 802 F.3d at 881 (quoting *Gallagher*, 874 N.E.2d at 58). As IDOC notes, the Settlement does not require the court to find that IDOC "had been" in non-compliance (i.e., that a violation was completed in the past). But it also does not require the Court to find that IDOC "is" in non-compliance (i.e., that a violation is ongoing). Instead, the Settlement uses the term "has been," which, as explained, encompasses both scenarios. And it makes sense for the court to be able to enter orders that help ensure both that past violations don't repeat and that on-going violations cease. Thus, the district court correctly found that because IDOC was in substantial non-compliance with the Settlement through the LHID violations, it could award attorney fees for the resolution of that non-compliance.

*B. The Evaluation and Re-Evaluation Decisions*

For this second issue, the relevant part of the Settlement provides that IDOC must ensure that inmates whose hearing screenings show that they are deaf or hard of hearing are "referred to an audiologist for an Audiological Evaluation at the earlier of: (a) thirty (30) days after arrival to their home facility; or (b) 45 days after being admitted into IDOC custody." The key word in this provision is "refer."

Refer in this context most ordinarily means "to send or direct for treatment." *Refer*, Merriam-Webster, https://www.merriam-webster.com/dictionary/refer; *accord St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1027 (8th Cir. 2015) (defining refer as "to send [or] direct for treatment, aid, information, or decision" (alteration in original) (citing Webster's Third New International Dictionary 1907 (1993))).

So, we agree with the district court that, based on the meaning of the word "refer," IDOC has *some* obligation regarding the completion of the evaluations—it must use its best efforts to actually "send" its inmates in need to an audiologist so that the evaluations can be performed. *Grant v. Bd. of Educ. of Chi.*, 668 N.E.2d 1188, 1197 (1996) ("A best efforts undertaking has been likened to the exercise of good faith implied in all contracts." (citations omitted)).

The district court, though, went one step further and determined that IDOC must ensure that the evaluations, or re-evaluations, are completed within a specific timeframe. That was a bridge too far.

By its plain terms, the Settlement only obligates IDOC to refer inmates for audiological evaluations and then to keep records of the evaluations and to treat inmates based on the

results of their evaluations. As the district court noted, "IDOC is correct that the Settlement requires a Class Member to be referred within the 30- or 45-day period, not physically evaluated within that time period."

So IDOC did not agree, expressly or by implication, to ensure that audiologists complete those evaluations within a defined period, and we "will not rewrite [the Settlement] to suit [Plaintiffs]" by stating otherwise. *Wright*, 554 N.E.2d at 514 (citing *A.A. Conte, Inc.*, 477 N.E.2d at 30).

Indeed, it would be hard to imagine IDOC taking on any such responsibility, as the audiologists who perform the evaluations are out of the control of IDOC and perhaps unenthusiastic about treating inmates. Similarly, IDOC certainly did not assume, as Plaintiffs state in their brief, the obligation to itself "conduct the evaluations" within a reasonable timeframe. As explained *ad nauseum*, IDOC very clearly agreed only to "refer" inmates in need for evaluations.

This plain reading is confirmed by many other provisions in the Settlement that *do* require IDOC to ensure that some aspects of the audiological care process are completed within specific timeframes. For example, IDOC must ensure that an inmate who requests a hearing screening "will receive such a screening within thirty (30) days." The parties thus "easily could have" included a similar obligation for the completion of audiological evaluations (even if difficult to achieve as stated above). *Id.* (citing *Cimino*, 479 N.E.2d at 1031; *Ebrahim*, 471 N.E.2d at 632). But they did not.

Plaintiffs argue that we should depart from this straightforward reading of the settlement for four reasons. We do not find any of them convincing.

First, Plaintiffs correctly point out that, under Illinois law, "[w]hen a contract does not specify a deadline for performance, a reasonable time will be implied." *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 829 (7th Cir. 2020) (citing *Bowens v. Quinn*, 561 F.3d 671, 675 (7th Cir. 2009)).

And because, as Plaintiffs assert, "[t]he Settlement requires IDOC to perform a specific act—an Audiological evaluation"—but does not set out a timeframe for performance, we should imply that IDOC must perform within a reasonable time. The issue, though, is that the Settlement does not require IDOC to perform an audiological evaluation. As explained, it only requires IDOC to "refer" inmates for such an evaluation, which is an obligation that comes with a set timetable and for which a timeframe need not be implied.

Second, our decision today does not, as Plaintiffs contend, thwart the stated purpose of the Settlement to "benefit deaf and hard of hearing inmates who are confined in IDOC correctional facilities." The fact is that Settlements are compromises in which the parties—as the term suggests—"settle" for less than they might have gotten at trial. They sacrifice some goals to achieve others and to resolve a dispute without the expense of further litigation. *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 521 (1986).

As Plaintiffs admit, then, "the relevant purposes in interpreting a consent decree (like any other contract) are the purposes embodied in the instrument rather than the maximum aspirations-which are bound to be inconsistent anyway-of the interested parties." *White v. Roughton*, 689 F.2d 118, 119–20 (7th Cir. 1982).

Our reading of the Settlement in this case furthers the stated purpose to benefit inmates. As interpreted, the inmates still receive its many benefits from the Settlement, including audiological screenings, a referral to an audiologist, and certain care after an audiological evaluation.

In the end, even the evaluation itself is a benefit of the Settlement because Plaintiffs will—as they admit—eventually receive it, just not as soon as they'd like. True, we could read the Settlement to benefit Plaintiffs even more. But the plain text of the Settlement is our North Star, not Plaintiffs' maximum aspirations.

Third, Plaintiffs argue that it would be "absurd" for the Settlement to allow IDOC to simply refer an inmate for an audiological evaluation and then sit on its hands. Not so.

Illinois law requires that contracts must be construed to avoid absurd results, "in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek." *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002) (citations omitted). But "[t]his is an interpretive principle, not a species of paternalism." *Id.*

Our interpretation of the Settlement does not lead to any absurd results. To start, we've already determined that IDOC's obligation to refer inmates in need carries with it a correlating obligation to use its best efforts to see that the inmate is actually sent to an audiologist for an evaluation. So IDOC can't sit on its hands as Plaintiffs fear.

What's more, nothing in the record shows that IDOC has engaged in the conduct that Plaintiffs complain might one day occur. Plaintiffs only complain that the evaluations aren't

happening quickly enough—but they acknowledge that they're happening.

IDOC also presented evidence to the district court showing that it has not sat on its hands. Since 2019, its primary health-care vendor, Wexford Health Sources, Inc., has "stepped up its efforts to identify additional audiologists" who are willing to treat inmates. But as detailed by Wexford's Vice President, those efforts are often fruitless as many audiologists refuse to work with inmates based on "concerns about security, the loss of other patients from the community who are concerned about the presence of offenders in the office, or the risk of lawsuits."

Even if Plaintiffs' fears were credible, Plaintiffs are still receiving the many other benefits from the Settlement that they bargained for. If they wanted to secure an additional benefit— that IDOC ensure the evaluations are carried out within a certain timeframe—then they should have demanded that it be spelled out in the Settlement. The omission of this extra requirement does not render the Settlement absurd. And even if the omission of such a requirement was inequitable, we will not paternalistically "add terms simply to reach a more equitable agreement." *Wright*, 554 N.E.2d at 514 (citing *Nat'l Tea Co.*, 427 N.E.2d at 806).

Fourth, Plaintiffs emphasize IDOC's responsibility to provide medical care under the Eighth Amendment and the Americans with Disabilities Act ("ADA"). But those constitutional and statutory duties are irrelevant to the contractual issue before us. This is a motion to enforce, so "it is the parties' agreement that serves as the source of the court's authority to enter any judgment," not federal law. *Alshabkhoun*, 277 F.3d at 934 (quoting *Local 93, Int'l Ass'n of Firefighters v. City of*

*Cleveland*, 478 U.S. 501, 522 (1986)) (citing *King v. Walters*, 190 F.3d 784 (7th Cir. 1999)).

No court has decided whether the Eighth Amendment or the ADA requires IDOC to provide Plaintiffs with audiological evaluations. And as part of the Settlement, Plaintiffs released their claims under those laws, and IDOC denied violating them.

In sum, there are no provisions in the Settlement requiring IDOC to ensure that the audiological evaluations are completed within a set timeframe. As a result, the court's evaluation decision—which required IDOC to ensure that the evaluations be completed within ninety days of an inmate's referral—was unsupported.

Further, the court's re-evaluation decision—which required IDOC to ensure the re-evaluation, by August 28, 2020, of the 700 inmates who suffered the LHID violations—likewise went beyond the provisions of the Settlement Agreement.

As stated, the Settlement gives the court power to enter orders "to ensure compliance" with the settlement. While the attorney-fee decision falls within this grant of authority, the re-evaluation decision does not because it imposes a duty on IDOC not specified by the Settlement—in other words, it requires IDOC to do more than merely "comply." For that reason, the court did not have authority to enter such a sanction.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision awarding $52,357.50 in fees and $1,741.35 in costs to Plaintiffs, and we REVERSE the decision of the district court

requiring IDOC to ensure that inmates receive audiological evaluations or re-evaluations within the timeframe ordered.

We TERMINATE our stay of the district court's order.